Good morning, Your Honor. Armin Solis on behalf of Appellant Mr. Moore. If I might, I'd like to explain something that's peculiar to stockbrokers when they move from one brokerage house to the other that's different than most employees who go from one job to the other. They take with them, generally if they've been in the business any length of time, a considerable asset, their book of business, upon which all brokerage firms rely and exist. So that book that they've developed at one firm becomes very attractive, if you will, to other firms and it is the lifeblood of the broker. What happened in this case, Your Honors, is that Mr. Moore left Merrill Lynch on a Friday afternoon, which is the normal course of things, and started working at Dane Rauscher the next Monday. On that same Monday, Merrill Lynch filed a complaint in Superior Court in the state of Arizona alleging breach of hearing and a preliminary or temporary injunction was issued preventing Mr. Moore from contacting any of his clients. That was predicated upon a restrictive covenant agreement that was signed by Mr. Moore approximately two weeks after he began his employment at Merrill Lynch. And the crux of the case that Mr. Moore brought against Merrill Lynch in its counterclaim before the NASD was this. When he was recruited by Merrill Lynch back in 1994, when he started, he was given a contract of employment and a promissory note, which he signed around the 29th of April, 1994, with no mention whatsoever that when he began his employ with Merrill Lynch, that he'd be required to relinquish his book of business. And what happens is they go from one brokerage firm to the next, and on the day that they leave, letters go out to their clients, urging them to come over to the new firm. So he's not informed that he's going to have to sign this agreement that says that once he's there, that book of business becomes Merrill Lynch's. About a week and a half after he's there, he's presented with this agreement. And the agreement essentially says, you have 30 days to consider this. If you fail to sign this agreement, which essentially says you can't contact any of your clients that you brought over for a year, if you leave Merrill Lynch under any circumstances, whether you quit or are fired, you don't have a job here anymore. Now, what you're telling us are the merits of your case that was tried before an arbitration panel. It was tried before an arbitration panel. They heard your story and will guess you. Well, no, they didn't. They didn't get to hear my story, and that's the problem, because we brought a racketeering claim. What we claimed was this, that Merrill Lynch Didn't they hear that story? No. They meant all why couldn't they have heard that story? They may not have heard this happen to dozens of other brokers, but the story you just told is something that your client presumably testified to. Well, the problem is that in order for me to prove my claim, which they allowed me to bring before them, I needed to show a pattern in practice. I needed to do some discovery, and they refused to permit me to do discovery as to the policy of Merrill Lynch with respect to this restrictive covenant agreement, which was a form agreement, which was used around the country. I had asked for that discovery. The panel said, no, all you can show is what happened in Arizona. Under Arizona law, I can't prove the pattern in practice by showing that, because I have to be able to prove under Arizona law. Can you show what happened in Arizona, or what happened in Arizona office? I can show what happens in Arizona, but there are no managing agents, which is what I have to show to attach liability to Merrill Lynch, that they approved or condoned the practice. I have to go outside of Arizona to do that. The panel said, no, you can't. Not only that, when I presented evidence or tried to present evidence of 10 other brokers throughout the nation, the panel wouldn't issue subpoenas. They mistakenly thought I was trying to bring a class action. You cannot bring a class action before the NASD. I wanted to reserve some time for my rebuttal. When Merrill filed in state court on the issue of jurisdiction, it waived the question of liability. It filed in state court. The state court heard evidence. Isn't this a separate action, though? The effort to have an arbitration award confirmed is a separate action, isn't it? It's not a separate action. They initiated the action in state court, and actually to compel arbitration. Pardon? To compel arbitration. Actually not to compel arbitration. For the TRO. For the TRO. What's interesting here is what the How did it get to arbitration? They filed a separate statement of claim with the NASD, which is the procedure. They could have gone to federal court to get the TRO. Oftentimes, they do that. Sometimes, they go to state court. Sometimes, they go to federal court. This time, they went to state court. While the case was pending before the NASD, they moved to set the matter for trial in state court. What happened was that the judge in state court essentially said, I'm not going to continue this TRO. I'm not going to give you a preliminary injunction because I think you may have engaged in wrongdoing, and I don't think that you'll be able to prevail on the merits, and held the case on the inactive calendar until the matter was to be resolved at the NASD. What Merrill did was it was shopping. It didn't want to go back before that judge on confirmation, so it filed for confirmation in federal court. It made the election. It filed there in 2001, and it was well over two years later before it moved in federal court to confirm. I know you make this argument in your brief that somehow Merrill Lynch waived, say, waived diversity, waived the right to go back in the federal court. Your brief cites no authority in support of the proposition. Well, it's the abstention document. It's abstention, Your Honor. I mean, when a litigant chooses a forum where they could have chosen the federal forum if, indeed, the federal court had jurisdiction, and they failed to do that, then they can't come back later and say, wait, well, I think I'd rather be in federal court now. You chose the forum. They tried to avoid that forum because they didn't like the 28 U.S.C. 1446, Your Honor. Do you have any authority in support of that proposition? Well, yes. The 28 U.S.C. 1446, Your Honor. And what's that say? It essentially says that once you file an action in a state court, if there's going to be a question of removal, it has to be done within 30 days. But they're not removing here. They didn't report to remove. Well, they didn't call it a removal. They can't remove. They're the plaintiff. Exactly. The removal is for the defendant. So the plaintiff ordinarily is entitled to choose whatever forum the plaintiff wants. And they chose. And now what they're doing is saying, well, we're not going to call it a removal. They've chosen the federal case, the federal forum in this situation. They chose the state forum. They filed their complaint in state court. Then what happens is, and it stayed pending the arbitration. And then the arbitration happens. And the arbitration happens. They get a result. And instead of going back to the court where they started to confirm, they go to federal court. How would it make any difference? I mean, I know that's not really the question before us. But once there's an arbitration award in hand, state law as well as federal law calls for that to be enforced by its own terms. So it would be confirmed anywhere they went, it would appear to me. So I guess, as I say, I'm not sure really that that's a germane question. But I don't really understand why, from your perspective, it makes any difference. Well, I probably wouldn't be here if the district court would have vacated the award. That's true, Your Honor. But it doesn't appear to be fair to the litigants for one litigant to be able to forum shop. And that's exactly what they did here. I guess my question is, once there's an actual arbitration that has taken place and an arbitration award that's ready to be confirmed, I don't understand why you think the result would have been different in state court on the question whether that arbitration award should be confirmed. Well, because all of the issues before that arbitration panel involved state law, not federal law. State law. It was a state racketeering statute. The evidence that was to be presented would be presented under state law. The state racketeering statute contemplated acts occurring outside the state, which is what we tried to bring before the panel, which the panel refused. It's the first time I've ever had a case where I had witnesses I wanted to present and I was prevented from presenting them on the very issue on an element of my claim. I had to prove a pattern of practice on a national level to be able to establish that high managing agents of Maryland approved this practice, which even the panel found to be obnoxious. And I wasn't allowed to do that. As you know, we don't review an arbitration panel the way we would a district court decision. What is our standard of review? Well, your standard, I think it's de novo. We review de novo what the arbitrator does? No, no. I think you review de novo whether or not the panel, the arbitration panel, that the panel cannot prevent the litigants from presenting relevant and material evidence. And that's what happened here. It's not a question of whether or not the evidence that was presented sustains the award. It was a question of whether or not the litigants got an opportunity to present evidence. That's the big issue here. Merrill Lynch says, well, gee whiz, there was sufficient evidence to justify the because we weren't permitted one discovery and two, we found on our own some 15 other brokers throughout the country who had had the same practice, had signed these agreements after they started, right after they started, but weren't informed beforehand, which would show that there was a national practice on the part of Merrill Lynch to recruit people, lie to them by omission, which is the statute in Arizona, not tell them they were going to have to sign this, and essentially coerce them into staying because once they left the firm they were with and their book began to transfer, they could not go and they couldn't go back. And Merrill knew that. And so you were precluded from showing this pattern. You were not precluded, I understand it, from trying to show the unlawful conduct with regard to Merrill's treatment of your client. Well, no, but the problem And as to that, the arbitration panel apparently found in favor of Merrill. Well, no. So if that's the case, that would suggest that it doesn't matter whether you can prove a pattern or not because you couldn't prove it for this individual. No, they actually found that in my client's case that the agreement was not given to him before his employment but after he started. The panel also found that that practice was a sharp practice and not what someone should do or a company should do. What I was prevented from proving and which I had to prove was that high managing agents of Merrill Lynch approved this. I couldn't just show that it happened in Arizona. I had to show that either through circumstantial evidence it was happening all over the country or in my request for documentation in my discovery request to show that there was a policy of Merrill Lynch to have brokers recruited, have them quit, have them come over to Merrill and then confront them with this agreement that said if you don't sign it now that you're an employee of Merrill Lynch, within 30 days you're out of here. No broker can do that because they're booked, they quit. The firm they quit from is not going to take them back. Their book is transferring. It's clear what Merrill was trying to do. It wanted to get the books. The brokers were unimportant. It was the assets they were trying to get and that's how they got them. You mentioned you wanted to reserve some time, Mr. Sleaze. Thank you. Thank you, sir. Good morning. Good morning. Paul Watt for Pelley Merrill Lynch. Let me start with the diversity jurisdiction issue which did not come up in Let me start with the diversity jurisdiction argument. I'm sorry, Your Honor, which did not come up in the opening argument. There certainly is no question that there's complete diversity of the parties here. Dean Rauscher, the other defendant, is a Minnesota corporation with its principal place of business in Minnesota. Merrill Lynch is a citizen of New York and Delaware. Mr. Moore is a citizen of Arizona. So there's complete diversity of the parties. The only question in terms of subject matter jurisdiction is whether the amount in controversy requirement is satisfied. And what we know from the cases is that whenever a plaintiff moves to vacate a $0 arbitration award, as long as the plaintiff is also seeking to reopen the arbitration to seek damages in excess of $75,000, in that context the courts have held both this Court of Fees and the 11th Circuit in the Peebles case which we mentioned in our Rule 28J letter. In that context, the amount in controversy requirement clearly is satisfied. Our case, though, involves the flip side of that, obviously. We're the defendant in whose favor a $0 arbitration award was issued. And we are seeking to confirm, not to vacate that award. So the question before the Court, I think, in this case is how do you measure the amount in controversy when it's the defendant seeking to obtain confirmation of a $0 arbitration award in its favor? And we would submit that the most straightforward way that the district court's decision here should be affirmed is to borrow by analogy the standard that's used in the context of measuring the amount in controversy for declaratory and injunctive relief. And in that context, the question you ask is you measure it from the value of the party seeking the relief. It's either the value of the right that the party is seeking to protect or the amount in terms of the harm that the party is seeking to prevent. And in this case, clearly, what Merrill Lynch was seeking was a confirmation of an award that said it would have to face no further liability on claims against it that Mr. Moore brought in the arbitration in excess of $5 million. He obtained a judgment in our favor on that, on those claims, and we're seeking confirmation of that award. In that context, clearly the amount in controversy is the $5 million that Mr. Moore, it was really in excess of $5 million, that Mr. Moore was seeking on his claims against us. And we would submit that that's precisely the reason why in the context when a defendant is moving to compel arbitration, the very outset of a case, there's obviously no award at issue at that point at all, in that context, the courts do look to the amount that the other side is seeking in terms of damages. That's how you value the amount in controversy for purposes of diversity jurisdiction when a defendant is seeking to compel arbitration. Isn't there an even easier way to get there in this case because there was an award of $75,000 to Merrill Lynch and even assuming that the claims on the other side were $1, then it takes it over the 70, because the award dealt with both. That's exactly right. Pardon me. So the court need not determine that the amount in controversy in terms of Merrill Lynch obtaining confirmation of the $0 award on Mr. Moore's counterclaims was the full $5 million, let's say, that Mr. Moore was seeking, but simply that the value to Merrill Lynch of obtaining confirmation of that award and facing no further liability on those claims was at least $1. And that clearly is the case. The value of obtaining confirmation of the award in Merrill Lynch's favor was clearly not $0. It was the value of not facing any further liability on the $5 million plus counterclaims that Mr. Moore had brought against Merrill Lynch. And I would agree with you, Your Honor, if you aggregate that with a $75,000 award in Merrill Lynch's favor, it's clear that the amount in controversy requirement was satisfied here. Mr. Woodward, I wonder if you'd discuss Mr. Solis' point that he wasn't allowed to prove his case. Sure. Yes, I'd be happy to, Your Honor. Let me just first correct one slight misstatement of the record that Mr. Solis made. I don't mean that in any nefarious sense. Mr. Solis is correct that the panel initially did rule as one of its discovery rulings that Mr. Moore would be limited to presenting evidence relating simply to his employment contract with Merrill Lynch. However, the arbitration panel then issued a second order in which it clarified that first order and said, just as Your Honor pointed out, that we're not going to limit you just to your employment contract with Merrill Lynch. We'll allow you to bring in evidence throughout Arizona. And if you can show that there is a pattern of unlawful conduct with respect to Merrill Lynch's recruitment practices in Arizona, we will certainly hear all of the evidence you have in relation to that. And in fact, the arbitration panel then, in the course of discovery, granted Mr. Solis' document request for documents from Merrill Lynch relating to the Restrictive Covenants Agreement. And Mr. Solis was provided with documents with respect to that agreement as it applied in Arizona. The arbitration panel issued subpoenas to every single witness in Arizona that Mr. Solis designated on the witness list and indeed subpoenaed witnesses outside of Arizona if they had some supervisory authority with respect to Merrill's recruitment practices in Arizona. And so Mr. Moore was certainly entitled to present all of the evidence he could gather with respect to the employment practices in Arizona. Now what the panel found, however, as Judge Clifton pointed out, looking at this evidence, and I'll just point out one other fact, at the hearing itself, Mr. Moore actually did call three other brokers from Arizona who testified to very similar occurrences where they were hired by Merrill Lynch and then alleged that it wasn't until after they had started that they were shown the Restrictive Covenants Agreement. So the arbitration panel had before it evidence that what happened to Mr. Moore was not an isolated incident, that there were other brokers to whom that had occurred, and that's in fact exactly why the panel found that it specifically said in its written decision most of the evidence supports Mr. Moore's allegation that he was not shown the Restrictive Covenants Agreement until after he had joined Merrill Lynch. But nonetheless, having heard that evidence, the panel concluded that the Restrictive Covenants Agreement was a valid and enforceable contract, that it was not obtained through business duress, by fraud, it was not unconscionable. In other words, found no unlawful conduct on Merrill Lynch's part with respect to its employment agreement with Mr. Moore. Now, that ends the case for Mr. Moore's purposes, and the discovery rulings that he's complaining about today don't have any bearing at all on the viability of his claim in light of that finding by the arbitration panel. Would you also respond to the argument that having once selected the state court as a forum, you were stuck with that and had to carry forward in the same place you had started? Yes, and that's not correct. There is no authority for the proposition that merely because you moved to compel arbitration in state court, and that is what we did here. We filed a motion for a TRO, which was granted, and then later filed a motion to compel arbitration in state court, and that's what sent this matter off to arbitration. But there is no authority that then says after you have initially elected to begin the arbitration proceedings in state court that you are not then free to bring an independent action, as Your Honor pointed out, an independent action authorized specifically by... Well, I guess that's the question, whether it is an independent action. Yes, and it clearly is because it's authorized by Section 9 of the FAA, which says that you can bring the action either in state court, if we wanted to, or you can bring it in federal court as long as the court has subject matter jurisdiction, which was the case here under diversity. But the allegation that this was somehow an improper removal of the case is clearly wrong. We did not file a removal petition in the state court. That state court action continued to go forward even after we filed our motion to confirm in federal court. Well, I guess that's the very question that they're raising. Why are you allowed to carry on two at the same time? Well, and that's exactly what the Colorado River abstention doctrine goes to. As the Supreme Court made clear both in Colorado River and in the Moses H. Cohn case, which is still the Supreme Court's leading case dealing with the application of Colorado abstention principles in the arbitration context, the general rule is that there is no bar to having state and federal actions dealing with the same parties on the same subject matter go forward simultaneously. The general rule is that that's perfectly fine. What Colorado River says is that only in exceptional circumstances when it's necessary due to further the wise administration of justice, only in exceptional circumstances may a district court exercise its discretion to abstain and essentially give up the jurisdiction that it rightfully has in deference to a pending state court action. And in this circumstance, the district court could not possibly have abused its discretion in deciding not to abstain because the state court here, after Mr. Solis filed a motion to vacate the arbitration award in state court, so there were clearly the two pending actions going forward on simultaneous tracks, the state court in its order of July 23, 2003 specifically said that the federal form, the federal court action was the more appropriate form for resolution of issues relating to confirmation of the award. And it said that because all of the parties to the arbitration were present in the federal action but they were not in the state action. The state action just involved Merrill Lynch and Moore, whereas the federal action involved Merrill Lynch, Moore, and the second defendant, Dean Rauscher. So here, the state court specifically said, I'm going to stay my hand. I think the federal form is the more appropriate one for this action to go forward and that's precisely why the district court here ultimately did not abuse its discretion in deciding not to abstain under Colorado River. But in response to your question, Judge Craver, about whether there's anything wrong essentially with going forward with an independent federal action, the cases specifically deal with that point. One of the cases that Mr. Moore cited, this Vulcan case from the Fourth Circuit, expressly addressed this exact question, whether once some proceedings relating to the arbitration have begun in state court, whether the subsequent filing of a motion to confirm is really, is it really just a continuation of the state proceedings or is it an independent  Vulcan case specifically held in Section 2 of its opinion that a motion to confirm in that context is an independent action authorized by Section 9 of the FAA. And it can go forward regardless of whether there was some prior state court action that was pending. The only issue that comes up in this context is simply whether under Colorado River, the federal court, in deference to that earlier state court action, should stay its hand. And as I pointed out here, there was no reason for the federal court to, precisely because the state court itself had said that the federal forum was more appropriate and therefore that the action should go forward in that context. Unless the panel has any further questions, I will submit it on that. Thank you. Mr. Walker, thank you very much. Mr. Solis, you get the last word here. First, I'd like to advise the Court that I think I'm cooked on the jurisdictional amount by the Thies v. B&B Brown and Bain case. That case came out after we briefed these issues, so I'm not happy. What can you say? However, the statement that Dane Rauscher is not a resident of Arizona is contradicted by the Merrill's pleadings, which I point out on page 9 of my reply brief. They allege that Dane Rauscher was a resident of the state of Arizona in their pleadings before the District Court, and I think it's just sort of a red herring out there. And I think also that the argument that abstention doesn't occur here because this is an arbitration proceeding governed by the FAA. The FAA does not confer subject matter jurisdiction in federal court. Both the state and local courts, state courts or the federal courts can deal with this. What is more the restrictions that were placed on Mr. Moore because as hard as I tried, I could not get the arbitrators to understand that I had an element I could not prove in Arizona. I could not prove that a high-managing agent approved of the practice without going outside of Arizona because there were no high-managing agents in Arizona. I propound that this is an  governed by the FAA. We were just told that you were allowed to serve subpoenas on people out of state if they were in the line and affecting Mr. Moore. Well, and the one person that they had was a Mr. Vick who was the person who recruited Mr. Moore and had been the district manager. So he was no longer in state when the arbitration occurred. I was permitted to subpoena him because at the time he was the person who recruited Moore and gave him the initial contracts, not the restrictive covenant agreement. But I wasn't permitted to go out. I had one interrogatory and I cite it, refer to it page 36 in my opening brief at footnote 15. It's very short and it says it's a request for documents and information concerning the financial consultant employment agreement and restrictive covenant, a copy of which is attached. State as follows, the date Merrill began using the agreement. Identify the persons who drafted the agreement. Identify all documents commenting, discussing, concerning, using, presentation, explanation of the agreement. With regard to competitive hires, identify all documents commenting, discussing, concerning the inclusion and effect of the provision allowing a 30-day right to rescind. Identify all documents discussing, commenting, concerning when and how the agreement should or may be presented to or competitive hire. Now, Merrill's argument is, well, gee, you got to have people in Arizona testify and I showed that they were victims of the same agreement and the same practice but I can't show that next level and that element that I need which is that Merrill approved it or some high managing agent approved it. I had witnesses who were going to testify that outside of Arizona this practice occurred in several other states, California, Illinois, etc. which would have circumstantially allowed me to do it but the arbitrators would not do it. They wouldn't let me bring those witnesses to testify. Why didn't you ask your Arizona witnesses who approved it? They didn't know. They know they didn't approve it. Well, no. Mr. Vick didn't know who approved it. Mr. Vick was a local district director. He wasn't a high managing agent. A high managing agent is somebody who can affect, under the federal definition of that term, under the Federal RICO Act which I cite, is someone who can affect the policy of the corporation. Mr. Vick couldn't and he was the highest man in Arizona that I could get to. Thank you. Solis, thank you. Mr. Watford, thank you as well. The case just argued is submitted. We're going to take a ten minute break. We'll start again at ten minutes after ten.
judges: Silverman, Graber, Clifton